Good morning, Tony Farmani on behalf of Mr. Phillips. Your Honor, this case is very troubling in that Mr. Phillips is serving 55 years to life in prison, a virtual death sentence, and he had absolutely no opportunity whatsoever to present a defense against the state's accusations. Now, it would have been a different case if the state's evidence against him was strong, but it wasn't. So not only was he unable to present a defense, and in particular his co-defendant's confession to the shooting, but the state's evidence against him was basically nonexistent. It came down to the uncle, uncle of the co-defendant, Kress, testifying that he comes out of the car, Mr. Phillips comes out of the car yelling that I shot the victim six times and buried him in the desert. And the desert part is clearly untrue. Absolutely untrue, Your Honor. And then you have Saucedo's testimony, who says that I saw Mr. Phillips throw a gun out the door. That makes no sense whatsoever, because you either are going to have to believe Saucedo or Bender, because Bender says he saw the gun. Meanwhile, Saucedo is testifying that before they go to Bender's house, he throws out the gun. Then you got Nika Shah's testimony, which she fabricated the whole thing. In fact, the prosecutor asked the jury to throw it out as garbage. She comes out after she's testified once for the prosecution. She comes out at the end of the trial and says, well, Saucedo told me that Phillips shot the victim. Now, is the legal question in front of us whether or not it was correct and under the AEDPA standard to exclude the statements from Kress? I mean, I'm trying to figure out what the ñ not whether ñ not the Gestalt, but what's the particular issue? I understand, Your Honor. I think the first question you have to deal with is whether AEDPA even applies here. Okay. Because clearly the State court did not even adjudicate the claim. And AEDPA is very clear, in order for AEDPA deference to even apply, there has to be adjudication of the claim on the merits. There was no adjudication of the merits. Of the constitutional claim itself, there was an adjudication of the evidentiary rule, which was declaration against penal interest, but there was no adjudication of the Sixth Amendment right to present a defense. Okay. So based on ñ and then what you also have here, Your Honor, is that the State court is making ñ Is that issue before the Supreme Court? Pardon me, Your Honor? Isn't that an issue that's before the Supreme Court right now? That is partially before the Supreme Court. It's time and time again the Supreme Court has said that in order for AEDPA to apply, there has to be an adjudication, actual adjudication of the merits. Right. And there are ñ well, I don't want to debate it because the Supreme Court's going to decide it, but ñ Right. That would be ñ They've also said an adjudication of the merits could be found where the court said nothing. That's correct in a habeas context, Your Honor. In a habeas ñ when you have a collateral review before the State court, a silent denial constitutes a determination of the merits. But in this case, this claim was raised on direct review, and the California Supreme Court denied a petition for review, which under California law itself means that they did not adjudicate it on the merits. And you look back to the State court's opinion, the Court of Appeals' opinion, and that clearly ñ that court did not adjudicate it on the merits. Well, they arguably ñ it's not clear to me they even adjudicated it on State law grounds because the opinion ñ the excerpt from the opinion seems to be they describe what the trial court did, and then they simply go on to say, precisely for the same reasons the trial court found the statements unworthy, we are convinced that the jury would have rejected them as evidence exonerating Phillips had they been admitted. That's not ñ And it didn't even ñ it's not clear to me that this is ñ that I think, as I read it, it's only a harmless error finding. Correct. And we don't know what standard they used for that harmless error. Well, that doesn't matter, does it? It matters if you ñ We have ñ there's a habeas corpus standard that applies, and the habeas corpus standard is whether there's a reasonable probability that the outcome would have been different. Ultimately, it matters if they applied the People v. Watson standard, which appears to be the standard they had that applied, then that would be a different standard than the Chapman standard, which would have been the constitutional analysis. Well, it doesn't ñ it doesn't matter whether or not they were applying a constitutional analysis or a ñ or a state law analysis, assuming it's a lesser standard for an evidentiary ruling and they weren't thinking about the Confrontation Clause and all that. I see where you're at. But it doesn't affect ñ we apply ultimately the Brecht v. Abraham standard. That's correct, Your Honor. And if you apply that standard, it's clear that the fact that the court defendant's confession was not admitted in trial, and the little ñ any evidence that was presented against Mr. Phillips, then you clearly have a substantial injurious effect as a result of that. That's for sure. And I think Your Honor is correct in pointing out that the State court here, particularly Justice Ramirez, presiding justice, in essentially every one of his opinions, that's what he does. If there is error, he may find a way to go around it. And in this case, for the substantial evidence test claim, the substantial evidence claim, if you see, he relied on three different evidence to say there was substantial evidence, none of which even amounts to any evidence whatsoever. I mean, they're all conflicting evidence. And it included Mika Shah's testimony, which was, as I indicated earlier, prosecutor described as being garbage. Unless the court has any questions, I can save my time for ñ Why don't we hear from the State, and then we'll make sure you get a chance to respond. Thank you. Thank you. And may it please the Court, Donald Ostertag, Deputy Attorney General, on behalf of the Respondent. AEDPA does apply here. And I think the reason that we know that this issue was addressed by the State court is that it was the only issue raised. And oftentimes, you see these issues raised jointly. You'll see a State claim made, and at the end, you'll see, oh, and by the way, this was a violation of due process. Or in some way, the claim is made together. Here it wasn't. The only claim that was raised was a constitutional claim. So by the State court's rejection of that claim, we know that it rejected the constitutional claim. Whether it was on a harmless error analysis or on the merits, that claim was squarely addressed by the State court, and it was rejected here. So that is how we know that the court reached a constitutional claim. It only cited one case in support. That was a State law case that applied a confrontation clause analysis. So by all means, the court here did reach the issue. To a different issue. I'm sorry? To a different issue. It wasn't precisely the same issue. It wasn't precisely the same issue. In Cervantes, which was the State law case, it dealt with the admission by the trial court, not the exclusion of evidence. That was raised as a straight confrontation clause claim. Here it was raised as a due process right to defend a defense claim, essentially due to the posture of the case, where here the evidence was excluded. Again, maybe it's just me, but I find the statement of the Court of Appeal sort of ambiguous. It starts off by describing what the trial court had done and said, while, as in People v. Cervantes, held some discrepancies in the Clarence statements, do not render them untrustworthy. Here Crest offered three completely conflicting and contradictory reasons for the murder and then goes on to say it would be harmless error for the same reasons. For the same reasons that the trial court found the statements untrustworthy, we are convinced that the jury would have rejected them. I'm not sure that that isn't so. We are harmless error ruling. Well, in some essence, the issue of harmless error overlaps with the merits determination here. And the reason for that is because the trial court is in a position to determine whether this evidence is trustworthy or reliable. So when the court says the jury likely wouldn't have found this trustworthy or reliable, it's difficult to, with precision, ascertain that they determined a harmless error analysis or they determined it on the merits. I think you can very well assume that that's a merits analysis as well. The trial court's in a position here to say this evidence isn't trustworthy, it's not reliable. That's a part of whether this comes in as a declaration against interest under state law. So when the trial court says this isn't reliable, and you have the court of appeal looking at that and saying, yeah, we have some issues with this reliability, we can see where the trial court's coming from, that's a merits analysis. And under California law, the legal analysis would be the same. On a confrontation clause issue. Correct. Yes. My understanding is that California's own interpretation of the confrontation clause is consistent with the ruling that the confrontation clause, assuming there was such a ruling, was not violated here. That's correct, Your Honor, yes. So assuming the AEDPA does apply, Miller, of course, wouldn't apply. But assuming that Miller does apply, we're still looking at reliability. We're still looking at reliability as one of the factors. And here, you look at this statement, it's patently unreliable. You have something that, as the trial court accurately said, conflicts with the physical evidence. There was no evidence of any knifelings, let alone a slip of the wrist. So why isn't that up to the jury to decide how much credence to give it? I understand the arguments as to why it should be deemed unreliable, but on that criterion, the defendant's statement, I buried him in the desert, that's flatly wrong also. Now, the trial judge says, well, but Quest gives several different statements. Okay, so he gives several different statements. The defendant gives one that's crazy. Well, in response to Your Honor's question, two things. One, there is a distinction between the credibility of a witness and the trustworthiness or reliableness of the evidence that is being presented. And that's really the distinguishing factor with the Kudjo case that was cited by my opposing counsel in the 28-J letter. There, the court was presented with live testimony outside of the presence of the jury and said, this testimony lacks credibility. I'm going to shield the jury from it. That's not what the trial court is there to do, and this court accurately held that. This is different. For it to come in under state law, for it to come in as a declaration against interest, it must be trustworthy and reliable. That's a different determination than credibility. Yes, but even if state law admits evidence, that doesn't necessarily mean that federal law hasn't been violated. Really, compliance with state law does not necessarily mean that federal law has been complied with. You're not arguing that. I'm not going there, Your Honor. Yeah, yeah. So why does this comply with federal law to keep it out? Well, the other reason is that you can't just open the doors. You can't tell the trial court to just open the doors to everything. Anything and everything has to come in. We know that both by the United States Supreme Court, says it in Chambers, that the evidence still must be trustworthy. It has to be reliable, and the trial court is in a position to make that determination. We're not asking the trial court to usurp the jury's role of determining credibility of evidence that comes in, but we can't just open the door to let everything in, no matter how much reliability or trustworthiness it has. Yeah, I understand, but this isn't quite everything. This is somebody who was there who says, I killed him. Now, he may or may not have killed him, but that's what he said. And Your Honor brings up the point of, well, Phillips said this, too. He said he buried him in the desert, and that's not true, but that came in. And one of the distinctions there is that that was offered by the people in this case. So that squarely fits within the hearsay exception of the admission of a party opponent, and there's no question that that meets that hearsay exception. But it could have been excluded. But it also is unreliable, I mean, on the theory that, listen, it's unreliable, we don't have to have it in here, but he lets that one in. Well, there's no element of, you know, reliability with that exception, with admission of a party opponent. All evidence must be reliable to some extent, but an express element of a declaration against interest, as outlined by the California Supreme Court and the U.S. Supreme Court with the statement against interest, is that it must be trustworthy and reliable. That's an express element of that exception. That was the exception the defense sought to admit this statement under, so the trial court was vested with the determination of, was this reliable, was this trustworthy. Well, this is a hearsay statement. Yes. So states are permitted to have rules against hearsay, the admission of hearsay, and is this rule the same as the federal rule that requires corroboration for a statement, an out-of-court statement, exculpating the defendant? California law is consistent with federal law in the terms of the third-party admission has to be corroborated. But the issue here was whether it fit within the exception for a declaration against interest. And one of the elements, as I said, for that is it has to be trustworthy, it has to be reliable. Trial court's in a position to make that determination. But, you see. Well, I generally agree with that, of course, and the California rule is sensible. On the other hand, I'm very uncomfortable with the trial judge having excluded a statement that is entirely exonerating, that says, I killed him, and doesn't even allow the jury to hear that, having made his own determination, that it's not believable. Oh, boy. Well, having made my argument, noticing my time and noticing the court's hesitation and trouble with the issue, why don't I address Brett? And assuming this statement came in, assuming the court said, okay, let's let this statement in, what happens then? Well, one, the rest of the statements come in. It's not only Kress' statement that I shot him and I slit his throat, which, for the reasons already stated and outlined, lacks credibility. He didn't slit his throat. He didn't slit his throat. The other guy didn't bury him in the desert. Right. But you know what else comes in, then, is Kress' statement that Phillips was the shooter. Sure. He was an eyewitness to the crime. He was one of the few people who was there who can provide that direct testimony that he was there. That corroborates Phillips' admission to the police that he was the shooter. It corroborates all the testimony that Phillips was seen with a gun immediately after the shooting. It corroborates the testimony of the uncle, of the Kress' sister who came in and testified. Now you have an eyewitness, one of the only people who was there. That statement comes in. That's extremely damning evidence that would have otherwise not come in, which it didn't come in in this case. And on top of that, you take these additional statements that I talked about. The evidence is substantially strong that he was the shooter. So if you admit this statement, and I'd like to point out as well, this statement, in essence, did come in. During cross-examination of Bender, Phillips' attorney, petitioner's attorney in this case, elicited, whether intentionally or not, this very statement. And the statement came out in terms of, I knew he was just joking around. I knew that he was just playing, was the quote of the uncle. And there was an objection to it. The objection was sustained. There was a motion to strike that wasn't exactly ruled on. But it came out as this was just a joke. Refresh my memory as to precisely what happened. During the cross-examination? Yeah, yeah. I have a cite here of the record for Your Honor. It was during the cross-examination of the uncle, of Bender. That was who this statement was made to by Kress. That was how this petitioner sought to admit it was through Bender's testimony. When he was on cross-examination, Petitioner's defense counsel asked him, you know, what was said. Did anybody, you know, Petitioner's counsel was. . . You had the record, the transcript? Yeah. If you could just read it, that would be helpful to me. It was, the exact question I don't have here, it's on the reporter's transcript, page 375. I have the response. But the question was somewhat carefully phrased by defense attorney, saying what was said, or did they tell you anything. Don't tell me the exact words, but what was said. And the uncle responds, Robert said. . . That's Kress, that was the statement we wanted to get. Robert said, no, I shot him, you know, playing. So I already knew right then that they was messing around. And then there was an objection. It was sustained. There was a motion to strike that the trial court didn't actually rule on. But this statement, in essence, we know what was going to come in if it did. And it was just a joke. They were just messing around. They were just playing. That was the statement that was going to break the case. A statement that also conflicts with the physical evidence, a statement that also would have led to the admission of extremely damning evidence. It's difficult to say that that had, if it came in, or would have had a substantial or injurious effect. And I assume this hearsay from Kress that I shot the guy and slit his throat was kept out because the state objected to its coming in. Is that right? That's correct, Your Honor, yes. I don't want to tell the prosecutor how to do his job. And obviously, given your age and the age of this case, you were not the trial attorney. Correct. But they give a triable issue instead of just letting the darn stuff come in. And it seems to me the reason, the only reason the prosecutor wants it out is that they think it will impede him in making the case. So for you to say, well, it's harmless, that wasn't quite the judgment of the prosecutor who wanted to keep it out. Why not just let the stuff come in, let the jury decide, and be done with it, and we wouldn't be here arguing all these years later about habeas? There's a reason that the U.S. Supreme Court has told us that it has to be trustworthy and reliable. We can't just let everything in. You know, no matter how ridiculous it is, we can always say, well, why don't we just let the jury make the call? If it's that ridiculous, let's let the jury reject it. But it just leads to more questions. My comment is a side comment about trial practice and about how to avoid appeals. And what if we decide against you? We would just set aside, this is relevant only to what I would call a sentencing enhancement. Correct. If he was the shooter, he got, in effect, double the sentence that he got. Correct, Your Honor. If he was just simply a participant in the murder. Yes.  If he wasn't the shooter, he would still have the 25 to life on the murder. The only thing that would be lost would be the 25 to life. So this just basically, this essentially increased the mandatory minimum. Correct. How old is he? I don't recall his precise age. He was a younger gentleman at the time. I want to say he was in his mid-20s at the time. I don't recall his exact age, though. Unless the Court has any further questions, let's go ahead. Thank you. Your Honor, Mr. Phillips is 36 years old right now. And I failed to see any evidence against him. I'm not sure what the government is talking about when they say that Mr. Kress, his co-defendant, implicated him in the shooting. He made three statements, Kress. The first one, he made it to, in private, to his uncle, right after the shooting. He went in there asking for money, and he said, I shot him and slit his throat. That's the first statement. The second statement is, afterwards, when he wakes up at his mom's house, I didn't know there was going to be a gun involved. After he had time to reflect and think about what happened, then he admits again to shooting after Phillips, supposedly after Mr. Phillips shot him. He goes in and shoots the victim again. Mr. Phillips, for his part, all he said was, I shot him six times and dumped him in the desert. Now, we know for a fact that's not true. It is not any reliable than what Mr. Kress said. And why? Because, number one, the victim, there's only three shots fired. Two of which hit the victim, only one of which was fatal. Two, nobody was dumped in the desert. The victim was right there. In fact, if you really put the statements together, Mr. Kress' statement is more reliable because there was a knife found, his blood was found there, the shots were fired first, and then the glass was broken. So the reliability test here, I think the court is, not only the court made that determination by itself, which, again, is contrary to clearly established law, dating back to Washington v. Texas, the jury, particularly in the circumstances of this case, the jury has the duty or the obligation or the right to make that credibility determination. And who knew what would have happened had that statement been discovered or had it been admitted to trial or further investigated. Additionally, Your Honor, in the Brett analysis, what do we have against Mr. Phillips here? We have his own statement coming out, which, as I just explained, is basically nonsense. We have Nika's testimony, Robert Kress' sister, that comes out and says, after, after she testifies again, that Salcido told me this and that. Now the court said, I'm going to let the jury hear this, even though the prosecutor didn't want to admit it. The court said, no, this is a jury determination. I'm going to let the jury make that determination. And then the third statement is Salcido, during police interrogation only, not on the road, during police interrogation only, telling the police officer at age 19, he was 19 years old at the time, and if you read the transcript of that police interrogation, you'll see how much influence it was on him. He comes out and says, I saw Kress, I saw Phillips throw something back out the window. Does that even make sense? If that's true, then how could Bender see the gun when Phillips shows up there? So that's all the evidence you have against Mr. Phillips. That's all you have. And the prosecutor, the only way he was able to convict Mr. Phillips was through this testimony, through his own admission and through getting out Kress' confession to the crime,  it was his mother who instigated the whole thing. Phillips was not even there when this happened. When his mother goes into the house and says, the victim gave me AIDS and impregnated me, which was completely a fabrication, both of them, he was there. Phillips was there, Salcido was there. What about the statement that your colleague made about what would have come in, I think he said from page 375 of the transcript that he read to us. I don't recall that, Your Honor. I don't recall that statement coming in. If it came in, he was apparently reading from the transcript of the trial. It came in and the objection was sustained as I understood it, but the argument is that if they had admitted Kress' statement, they would have been able to use then the objection would not have been sustained because they were using it to impeach the essay declarant. Correct. And I think it would have been an entirely different case had that statement come in. I mean, the trial would have been different completely. The prosecutor, I mean, the closing argument of the prosecutor rested entirely on the fact that Phillips was the shooter. They had nothing else against him. Did he testify? He didn't testify. Pardon me? Did he testify? Mr. Phillips did not testify, Your Honor. And I think the law is clear that he didn't have to. No, I agree with it. And also another point. Just in weighing harmless error analysis, it's not a question of drawing any inferences. It's just looking at what the evidence is on both sides. I understand, Your Honor. There are two points I wanted to make. One is the state is saying that had Kress' statement come in, his confession to shooting the victim, then his other statements would have come in too against him. That's not true, Your Honor. It would have been a confrontation clause problem there. He wasn't available to be cross-examined, so his statements couldn't have come in against Mr. Phillips. So that part of the statement, he couldn't. The rule, at least I'm not sure what California rule is, but the rule in the federal court is, under the federal rules of evidence, that you can impeach a hearsay declarant in the same way as you could if you had actually testified. I'm not sure I understand, Your Honor. The point I'm making is. In other words, if you admit hearsay within the hearsay rule, with an exception to the hearsay rule, then the rule, I think it's 806, says that impeachment evidence can be offered in the same way as if the witness, if it wasn't hearsay but the witness had actually given the testimony in court. But that wouldn't have been impeachment, really. It would have been directly implicating another defendant, the co-defendant in the crime. But wouldn't it have impeached the statement that the declarant did it, that Kress did it? It may have, but I think it would have been subject to the Bruton v. United States analysis. Wouldn't it have? I mean, I imagine if there's a co-defendant implicating another defendant directly in the crime, that statement would not be admissible. That's as a general rule, but we're dealing here with an offer of an out-of-court statement to exculpate the defendant, and the prosecutor may be sitting there with a statement by the same witness inculpating him. It seems strange to me that you would not be able at that point to introduce that inculpatory statement, just as you would if Kress had actually testified from the witness stand. Even if true, Your Honor, I think the jury would have seen that Kress had the ultimate motive to commit this crime, not Mr. Phillips. Well, it was clear that he did. Absolutely. Mr. Phillips had no motive whatsoever. Well, he had no motive. He essentially advised him throughout the whole thing. Well, what was he doing there to begin with? I mean, people do stupid things. Why was he even there? Why did he go? I mean, there's a statement that I think is attributable sort of to both of them, that we capped the victim. I mean, why was he there? He was there because he was young and stupid. That's right, and according to Salcido's testimony, he essentially decided to go with them to buy some marijuana. I mean, it's very plausible that's what he did. There was no evidence that he was present at the time that Kress's mom comes in there and tells this story. There's no evidence that they ever talked about it, about everything is Kress here. When you pile all that up and then you add Kress's confession, you not only have the substantial injurious effect and the gun allegation, you have it on the murder charge, I think, as well. And wasn't there DNA evidence to support the notion that Kress had actually been the one who broke through the bathroom window? That's correct, Your Honor. And the timing indicated that, therefore, it was only the petitioner who could have fired the shot. No, because the shots were fired before the glass was broken. So essentially, the scenario would have been Kress shoots at the door, goes to finish the job. He's mad, he's drunk, he's the one who's drinking all day long, he's the one who's on speed, who's the one whose mother called him right before the crime and said your grandfather passed away, and he's the one whose mother told him that the victim gave me AIDS. I mean, it's as simple as that. I mean, Mr. Phillips is really, the only explanation for him being present there is that he was either really stupid or that he wanted to go along to buy marijuana. Then his statement comes in that he comes out of the car, flying out of the car, and he says that. I mean, which, again, makes absolutely no sense. He didn't say he went to buy marijuana. Pardon me, Your Honor? He didn't say he went to buy marijuana when he got out of the car. No, he didn't say that. But you were talking about, at the time, in 2004, I believe, at the time he was a 26-year-old guy. He was a 26-year-old. He was drinking. He didn't drink as much as Kress did, but he was drinking. He was probably, he was dumb. He was stupid. There's no question. But, you know, the law shouldn't put you away for 50 years just because you make a mistake like that. I mean, you have to have actually pulled the trigger. And for him to go out there and pull the trigger on behalf of someone he knows merely for two to four months, it makes no sense. That's why the prosecutor wanted to get the statement in and wanted to get Kress's statement out. That's essentially why. The only way the prosecutor was able to put Phillips away was by that statement and getting Kress's statement out. That was the only way. Otherwise, there was nothing else. Okay. Thank you. Thank you very much. Thank both sides for their arguments. Thank you. Phillips versus Herndon, submitted for decision.
judges: Korman, Goodwin, Fletcher